LEGGETT, Respondent, v. CRAGO et ux, Appellants.

(213 N. W. 11.)

(File No. 5730.    Opinion filed April 1, 1927.)

1.  **Mortgages—Rescission—Mortgages Given as Part of Uncompleted Negotiations to Modify Executory Contract of Purchase Cannot Be Foreclosed After Purchaser's Notice of Rescission.**

    Where suggested modification of executory contract had not been completed when purchasr gave notice of rescission, vendor could not foreclose mortgages executed and delivered as part of negotiations to modify contract.

2.  **Vendor and Purchaser—Purchasers Cannot Without Notice Rescind for Delays in Closing to Which They Consented, Where They Held Possession and Assumed Right to Sell.**

    Where delays in closing contract for sale of land were expressly or tacitly consented to by both parties and the later delays were occasioned by the purchasers and the purchasers held possession and tried to sell, purchasers might not rescind without first giving vendor reasonable time to close the deal.

Note.—See, Headnote (1), American Key-Numbered Digest, Mortgages, Key-No. 25(5), 41 C. J. Sec. 210; (2) Vendor and purchaser, Key-No. 120, 39 Cyc. 1431.

Appeal from Circuit Court, Lyman County; Hon. John G. Bartine, Judge.

Action by Frank C. Leggett against Leslie G. Crago and wife, in which defendants interposed a cross-complaint. From a judgment for plaintiff and an order denying a motion for new trial, defendants appeal. Judgment and order reversed, with direction.

*Walker & Gurley,* of Armour, and *J. W. Jackson,* of Kennebec, for Appellants.

*Brown & Brown,* of Chamberlain, for Respondent.

BURCH, J.  Plaintiff brings this action to foreclose two mortgages on a tract of land in Lyman county. Defendants answer setting up a general denial, except as to certain matters admitted, and by way of counterclaim they allege that the mortgages were given under a contract which has been rescinded, and that the mortgages are therefore without consideration and void, and they ask a return of the money paid under the contract and a cancellation of the notes and mortgages. The case was tried to the court, judgment rendered for plaintiff, and defendants appeal from the judgment and an order denying a motion for new trial.

There are fifty assignments of error each argued separately. Forty-eight might well have been argued together under the general head of rescission. Assignments pertaining to a rescission of the contract will be first considered.

Plaintiff was the owner of a tract of land of nearly 2,000 acres, a major portion of which was in Lyman county and the remainder in Tripp county. On June 26, 1919, he entered into a written contract to sell the tract to the defendant Leslie G. Crago and one Archie C. Jenson for a consideration of $50,710, of which $5,000 was paid in cash, $10,000 was to be paid March 1, 1920, and the balance was to be carried on mortgages running five years at 6 per cent interest. By the terms of the contract plaintiff agreed to convey a good title by warranty deed, and to deposit the deed and abstract in escrow in the Farmers' State Bank at Reliance, S. D., until March 1, 1920. Abstracts were procured and sent to Crago, who had them examined by an attorney, J. W. Addie, of Armour. Some defects in the title were found and the abstracts were forwarded to M. Q. Sharpe, attorney of Oacoma, acting for Leggett, and Sharpe proceeded to take the necessary steps to cure the defects. Some months elapsed before the defects were cured, and the title finally accepted by the purchasers. In the meantime Jenson sold and assigned his interest in the contract to Crago. For the $10,000 payment to be made March 1, 1920, Leggett accepted the promissory note of Jenson for $5,000, and Crago paid his share, $5,000 in cash. A warranty deed for the land was deposited by Leggett in the Farmers' State Bank of Reliance March 28, 1920. After the title to the various tracts composing the whole had been perfected and Crago had obtained the interest of Jenson in the contract, Crago and wife, to complete the deal under the terms of the contract, executed two notes, one for $10,000 secured by mortgage on the Tripp county land and one for $25,710 secured by mortgage on the Lyman county land. Because of the delay in submitting the abstracts, the examination of the abstracts, and the final perfecting of the title, the mortgages were not executed until some time after the 1st of March, 1920, but they were dated March 1, 1920, and sent to Sharpe in the early part of 1921. In January of 1921, Leggett went to Texas and did not return until May of that year, and Attorney Sharpe was left in charge of the transaction, and the mortgages were sent to him. After Sharpe

received the mortgages, he held them with the consent of Crago, and did not record either the deed or mortgages because it was thought the Legislature might repeal the Mortgage Registry Tax Law. After adjournment of the Legislature, when it was known that this law would not be repealed, the instruments were further held until the return of Mr. Leggett from Texas. When Leggett returned the interest on the mortgages for the first year had become due amounting to $2,142.60 and Leggett desired payment. Negotiations for an extension of time in which to pay the interest were carried on between Leggett and Crago and resulted in Crago's executing in August, 1921, new notes and mortgages dated March 1, 1921, which included the interest less $200. There is some dispute in the evidence as to the purpose of deducting this amount. Leggett said it was to be paid in cash by Crago to be used in paying recording fees and "to close the deal."

The second series of mortgages were in smaller denominations being composed of two $5,000 mortgages on the Tripp county land and one $10,000 mortgage and one $25,092.20 mortgage on the Lyman county land (the two last-mentioned mortgages are those sought to be foreclosed in this action). The total of these mortgages appears to be less than the total of the first series, but it is explained that the acreage of the tract was discovered to be less than the contract called for, and by agreement the error was corrected. Crago never paid the $200. More interest accumulated, but Crago made no payments, and on June 19, 1922, another agreement was entered into whereby Crago agreed to pay $500 in consideration of an extension of time on the interest then due. This agreement was reduced to writing. Crago claims that he had been demanding his deed and was unwilling to sign this agreement until Leggett promised to send it to him, and that on the strength of such promise he signed the last-mentioned contract. The contract makes no mention of the deed, and Leggett denies that he agreed to send the deed. In any event the $500 was never paid. Leggett was pressing Crago for this payment and had threatened foreclosure of the mortgages when Crago consulted counsel and on the 30th of June, 1922, gave notice of a rescission of the contract. Crago had never taken actual possession of the place by moving onto it, but had received some rent, in all about $240.

Appellants claim the right to rescind for the reason that no

deed was ever delivered as agreed; that the deed executed and
first placed in escrow was defective, in that the property was not
sufficiently described therein; that no revenue stamps were prop-
erly attached (the stamps being uncanceled and fastened to the
deed by a clip but not pasted thereon); and that the description
of one 40-acre tract had been inserted after the acknowledgment
without a reacknowledgment of the deed.

[1]   We will first consider the right to rescind for failure to
deliver deed.   In determining the contractual relation of the parties
we must start with the written contract.   The deed was not de-
posited in escrow before March 1st, as agreed in the written con-
tract, nor were the abstracts furnished or the title perfected and
the deal closed as therein agreed.   For some time after the execu-
tion of the first series of mortgages and when the deal could have
been closed, it was held up for the convenience of Leggett in the
hope that he could save taxes on the mortgages.   It cannot be
said that the contract had been performed by a delivery of the
deed to Crago and of the mortgages to Leggett.   Nowhere does
the evidence indicate that either of the parties so understood the
transaction.   The contract remained executory.   While it remained
executory, attempts were made to modify it.   In furtherance of
such attempts Crago executed other mortgages and promised to
pay $200 in cash.   But he did not pay the cash.   Leggett might
have accepted the new mortgages and the promise to pay and
closed the deal by delivering the title papers, but he did not do so.
All were held, the deed, the first series of mortgages, and the
second series of mortgages, pending payment of the $200.   That
was no more than a conditional acceptance, and the condition upon
which the acceptance depended was never performed.   The same
situation existed after the signing of the agreement to pay $500,
and until that was paid there was no acceptance of the new series
of mortgages nor any delivery of the deed.   To review all the evi-
dence would make this opinion too long, but it has all been care-
fully considered and leads to the inevitable conclusion that Sharpe
was to finally close the deal by recording and delivering the deed
and mortgages.   This is shown by correspondence.   On March 8,
1921, the escrow bank wrote Crago:

"  *  *  * The deed will be sent direct to you from Mr. Sharpe."

Two days later, on March 10, Sharpe wrote Crago:

"* * * As I understand it your attorney has already examined the abstracts to this land and all we have to do is to put the deed and mortgage on record and then send you the deed. * * * Please let me know if this is the way you want the closing of the deal made and we will go ahead and close it up as rapidly as possible."

On the 14th day of March, Attorney Addie wrote Mr. Sharpe as follows:

"Mr. Leslie Crago just handed me your letter dated March 10, and I am replying to it for him. You can place the deed and mortgage on record as suggested in your letter."

On the 22d of June of the same year Sharpe wrote in regard to the filing of the deed and mortgages that Mr. Leggett was to get the money to pay the mortgage registry tax and that he would then have the papers all filed together. On the 19th of August, Sharpe wrote Addie, inclosed four notes and mortgages, being the notes and mortgages of the last series, and asked Mr. Addie to have Crago and his wife execute the mortgages, and he then says:

"As soon as I receive these papers properly executed, I will return the old mortgages and notes. * * * Please get the $200 from Mr. Crago also, and return with the papers. * * * I will then record the deed to the land and also the mortgages, returning the deed to Mr. Crago or you and delivering the new mortgages to Mr. Leggett."

The notes and mortgages were executed and returned, but Crago did not pay the $200 and on the 11th of October Sharpe wrote to Addie:

"I think it is best to hold up the recording of the papers until this $200 cash payment is sent and I will do this, and as soon as I receive the payment I will then record the deed, mortgages and, etc., and return the deed to Mr. Crago or to you."

Thus it will be seen that in so far as the delivery of the deed was concerned Leggett though his attorney agreed to record it and send it to Crago or his attorney, as soon as the deal was completed. Until that was done the contract remained executory. This was the situation when the notice of rescission was served. The execution of the mortgages sued on and the placing of them in Sharpe's hands were steps in negotiations to modify the contract which were not consummated. As offers they might be withdrawn

before final acceptance and were withdrawn upon giving the notice of rescission. After such notice these mortgages were recorded, but that could not make them effective, nor amount to an unconditional acceptance of the proposed modification of the written contract. Such proposed modifications had been withdrawn. It will not be necessary to decide what the result would have been if Leggett had stood upon the written contract and brought his action upon the first series of mortgages. His position seems to be that he accepted the second series of mortgages and complied with the contract to deliver the deed by depositing it in escrow subject to the demand of Crago. The deal not having been closed, plaintiff cannot maintain his action upon the mortgages; but his rights must depend upon the executory contract.

[2] At the time of giving the notice of rescission, negotiations were pending between the parties, and all delays in closing the deal were acquiesced in, or expressly consented to by appellants. In some instances, the delay was for the benefit of respondent, and in other instances for the benefit of appellants. All of the later delays were occasioned by appellants' failure to make promised payments. During all this time appellants held, or claimed the right of, possession to the land and tried to sell the same. Under such circumstances, appellants had no right to rescind without first giving to respondent a reasonable time to accept or reject the pending negotiations and to close the deal according to the agreement or abandon the contract. The action of appellants prior to suit cannot be upheld as a valid rescission of the contract.

On the trial respondent took the position that depositing the deed in escrow was a compliance with the contract. Under such circumstances appellants may feel that their cross-complaint should now be treated as an action to rescind. So treated, the question arises: Should equity now permit appellants to rescind the original contract entered into, because not performed within the time provided for its performance? All delays were either expressly or tacitly consented to by both parties. Appellants suffered no disadvantage by the delay, or by failure to receive the deed. Their right of possession was not disputed. They had full benefit of any speculation in the price of the land. They tried to sell it, and they used it as fully as if they had had title. If the deed

as executed is defective in any manner it can be corrected, and plaintiff has at no time refused to make the corrections if desired. No equitable grounds are shown entitling appellants to rescind. Respondent, for the reasons appearing in the forepart of this opinion, has no right to maintain his action on the mortgages. Appellant has no right to rescind the executory contract.

The judgment and order appealed from are reversed, with directions to dismiss the action.

CAMPBELL, P. J., and GATES, POLLEY, and SHERWOOD, JJ., concur.